1   RICHARD D. AGAY [Bar No. 27998]
    1363 Woodruff Avenue
2   Los Angeles, CA 90024
    310-279-1237
3   E-Mail: agayrich@aol.com

4   Attorney for Plaintiffs

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/07/2024 3:52 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

5

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11  RICHARD AGAY and ARLINE          )  CASE NO. 24STCV05779
    AGAY, individually and as Trustees )
12  of Agay Trust,                    )  (Honorable
                                      )  Department
13          Plaintiffs,               )
                                      )  COMPLAINT FOR NEGLIGENCE,
14          vs.                       )  BREACH OF FIDUCIARY DUTY,
                                      )  FRAUD AND DECEIT, ELDER ABUSE
15  UBS Financial Services, Inc. and  )
    DOES "A" Through "Z", inclusive,  )
16                                    )
            Defendants.               )
17                                    )
                                      )
18

19          Plaintiffs allege as follows, each cause of action being against all Defendants:

20                          **FIRST CAUSE OF ACTION**

21                            **(For Negligence)**

22      1.      Plaintiffs Richard Agay (herein, "Richard") and Arline Agay (herein, "Arline")

23          are trustees of a revocable trust called the Agay Trust created by a Declaration

24  dated, and executed on, October 12, 2009.   While alive Richard and Arline are the sole

25  beneficiaries of the Agay Trust.   As the sole beneficiaries of the Agay Trust, the activities

26  of either as a Trustee was in all respects indistinguishable from being by or for them, "the

27  Agays," apart from the trust and therefore no distinction will be made in this Complaint.

28      2.      The claims alleged in this Complaint are not for a contract or installment sale

for goods or services subject to Civil Code §1801 and following, Unruh Retail
Installment Sales Act, and none ie a claim on a conditional sales contract subject to Civil
Code §2981 under the Rees-Levering Motor Sales and Finance Act.

3.    The true names and capacities, whether individuals, corporations, or otherwise
of Does "A" through "Z", inclusive, are unknown to Plaintiffs at this time, and
Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs will ask leave of
the Court to amend this Complaint to show their true names and capacities when the same
have been ascertained.  Reference herein to "Defendants" without other limitations shall
include Defendant UBS Financial Services, Inc.(herein, "UBS") and fictitiously named
Defendants.

4.    Plaintiffs are informed and believe, and based upon such information and belief
alleges, that all times herein mentioned each Gregory Geller (herein, "Geller")
bore the title of UBS Financial Advisor and he along with Does "A" through "H", inclusive,
was each the agent, servant and employee of UBS and Does "I" through "T", inclusive, and
that UBS was at all times herein mentioned, the agent, servant and employee of Defendant
Does "U" through "Z", inclusive, and that each such agent, servant and employee was at all
times acting within the purpose and scope of said agency and employment.

5.    Plaintiffs are informed and believe, and based upon such information and belief
allege, that at all times herein mentioned, Defendants have acted in a conspiracy
with one another for the purpose of engaging in the activities hereinafter described.

6.    In significant part to provide for their support and maintenance after their
work declined and after their deaths for their children by the year 2000 the
Agays had brokerage accounts at Paine Webber for investment into stocks, bonds and
mutual funds  (herein, collectively "investments").  In, or prior to, 2000 Geller became
their Financial Advisor at Paine Webber.

7.    In or about 2000 UBS acquired part or all of Paine Webber, Geller became the
Agay's Financial Advisor at UBS to guide them in investments to provide for
them in their declining years.   UBS accounts for the Agays replaced their accounts at

1   Paine Webber.    For the same purposes UBS later opened an Independent Retirement

2   Account for Richard and accounts for the Agays, making a total of seven accounts so

3   opened (herein,"Agay UBS Accounts")

4       8.    UBS holds itself out as seeking to provide the best possible investment

5             services to its clients and as having a reputation to do so.

6       9.    Starting in or before 2000 and until mid 2023 UBS made around one thousand

7             investment purchases for the Agays (herein, "UBS investments"), over seven

8   hundred fifty of which were made by UBS for the Agays without any consultation by UBS

9   with either of the Agays, but rather pursuant to UBS's discretion granted it by Arline by

10  virtue of which  UBS had a duty to manage and monitor actively those UBS investments.

11  Of the rest of UBS investments, numbering in the hundreds, other than a half-dozen every

12  one was made based upon a prior recommendation and **advise** by Financial **Advisor** Geller

13  to make such purchase.

14      10.   During that period of time UBS also purchased several certificates of deposit

15            for the Agays from banks UBS alone chose, and UBS sold UBS investments it

16  had before purchased for the Agays, and every such sale was made based upon a prior

17  recommendation and **advise** by Financial **Advisor** Geller to make such sale.  With the

18  half-dozen exceptions above noted and one or two sales thereof, every UBS investment

19  purchase or sale by the Agays was executed by UBS either without any consultation with

20  either Richard or Arline or with a prior recommendation by UBS.

21      11.   On or about May 2, 2019 UBS executed a purchase by the Agay Agays of four

22            thousand (4,000) shares of First Republic Bank preferred stock with a

23  5.5% dividend payable quarterly bearing generally used Committee on Uniform Securities

24  Identification Procedures (commonly abbreviated and known as "CUSIP") identification

25  No. 336158803 at a total price of One Hundred, two thousand, one hundred four dollars

26  and eighty-five cents ($102,104.85) of which six hundred five dollars and twenty-five

27  cents ($605.25) was paid to UBS for commissions and fees/charges.  The Agays agreed to

28  make the purchase based entirely upon Geller's the advise and recommendation.  Prior to

1  Geller's contacting Richard to advise and recommend this purchase the Agays had never

2  heard of this stock.

3        12.   Plaintiffs are unaware whether UBS or any of its affiliates made the herein

4             alleged 2019 sale acting strictly as a broker or whether in fact it was the seller

5  and in addition to the commissions and fees/charges also made a profit on the sale.

6        13.   On or about October 7, 2021 UBS executed a purchase by the Agays of four

7             thousand (4,000) shares of First Republic Bank preferred stock with a

8  4.0% dividend payable quarterly bearing CUSIP No. 33616C720 at a total price of Ninety-

9  seven thousand, six hundred thirty-six dollars and fifty-nine cents ($97,636.59) of which

10  One thousand, four hundred forty-eight dollars and eight cents ($1,448.08) was paid to

11  UBS for commissions and fees/charges.  The Agays agreed to make the purchase based

12  entirely upon Geller's the advise and recommendation.  Prior to Geller's contacting

13  Richard to advise and recommend this purchase the Agays had never heard of this stock.

14        14.   After the October 7, 2021 purchase UBS sent the Agays a written

15             confirmation part of which reads: "An Affliate of UBS Financial Services,

16  Inc. makes a market in this security and may have acted as principal."  Plaintiffs are

17  informed and believe, and based upon such information and belief allege, that the

18  foregoing means that the UBS affiliate was the actual seller and that in addition to the

19  commissions and fee/charges above alleged UBS or its affiliate made a profit on that

20  purchase.  Similarly, Plaintiffs are informed and believe, and based upon such information

21  and belief allege, that UBS Securities, LLC is an affiliate of UBS and that said

22  affiliate was a book running manager or underwriter for the issuance of First Republic

23  Bank preferred stock, and that said UBS' affiliate and was compensated for that purchase.

24        15.   At no time prior to consummation of Richard's agreement on behalf of the

25             Agays to make that purchase did Geller or anyone else at UBS advise

26  either of the Agays that a affiliate made a market in that First Republic Bank preferred

27  stock or that it was the actual seller or that UBS' affiliate was a book running manager or

28  underwriter for the issuance of First Republic Bank preferred stock.

COMPLAINT

16.    On March 10, 2023 the Silicon Valley Bank was shut down by federal

regulators.  In response to that shut down the price of all (or virtually all)

banks stocks took a hit, that is, declined which Geller said stemmed from an unfounded

fear that the entire financial industry was in trouble.  Just one week earlier UBS sent the

Agays a quarterly First Republic Bank dividend so the UBS message that the Silicon

Valley Bank failure did not foretell that all bank stocks, and in particular First Republic

Bank stock, would become worthless was reinforced.   And on March 14, 2023 First

Republic Bank declared that it would pay its quarterly dividend on the other preferred

stock held by the Agays which UBS paid to the Agays on April 1, 2023.   So as of March

16, 2023 what UBS had said and done led the Agays to believe was that the Silicon Valley

Bank failure should not cause them to be concerned that other banks and in particular First

Republic Bank would follow in the footsteps of Silicon Valley Banks's collapse.

17.    But, on March 16, 2023 First Republic Bank suspended, meaning it decided

not to pay, its next common stock quarterly dividend.  First Republic Bank's

decision not to pay its quarterly common stock dividend signaled that it might be in dire

financial straights.   Therefore, being apprised of that decision was critical to holders of

First Republic Bank common or preferred stock in weighing their determination of

whether to hold or sell their shares ahead of any closure of the bank, the apparent risk of

which was dramatically heightened by its decision to not pay that dividend.

18.    Given that an UBS affiliate made a market in First Republic Bank preferred

stock, and was a book running manager or underwriter for the issuance of

First Republic Bank preferred stock, Plaintiffs are informed and believe, and based upon

such information and belief allege, that UBS' clients held millions of dollars of First

Republic Bank stock in accounts at UBS, and as a result had a heightened interest in First

Republic Bank stock. For those reasons, among others, by March 17, 2023 UBS should

have known of the March 16, 2023 First Republic Bank decision not to pay its quarterly

common stock dividend, and Plaintiffs are informed and believe, and based upon such

information and belief allege, that no later than March17, 2023 UBS did in fact know of

1  that First Republic Bank's decision.

2      19.   For the reasons above alleged UBS had a duty to the Agays as well as the rest

3           of its clients holding First Republic Bank stock to advise them of the First

4  Republic Bank decision not to pay its next quarterly common stock dividend.  UBS never

5  told either of the Agays of said First Republic Bank decision not to pay its quarterly

6  common stock quarterly dividend.  Plaintiffs did not learn that fact until after the First

7  Republic Bank was seized by federal regulators as alleged below, and their learning came

8  from independent inquiry after that seizure.   Plaintiffs are unaware (yet) whether UBS

9  advised other of its clients of such decision, but if it did, then its failure to so advise the

10  Agays is even more reprehensible.

11      20.   On April 7, 2023 First Republic Bank suspended (decided not to pay) its

12           quarterly dividends on its preferred stock.  For the same reasons as above

13  alleged UBS had a heightened interest in First Republic Bank stock, and no later than

14  April 10, 2023 UBS should have known of the April 7, 2023 First Republic Bank decision

15  not to pay of its quarterly preferred stock dividend, and Plaintiffs are informed and

16  believe, and based upon such information and belief allege, that UBS no later than April

17  10, 2023 did in fact know of that First Republic Bank's decision not to pay said dividend.

18      21.   For the reasons above alleged UBS had a duty to the Agays as well as the rest

19           of its clients holding First Republic Bank stock to advise them of the First

20  Republic Bank decision not to pay its next quarterly stock dividend.  UBS never told either

21  of the Agays of said  First Republic Bank decision not to pay its quarterly preferred stock

22  quarterly dividend.  Plaintiffs did not learn that fact until sometime after May 1, 2023, but

23  on May 1 or May 2, 2023 became aware of the likelihood that such dividends would not be

24  paid when they learned of the bank's failure as alleged below.   Plaintiffs are unaware (yet)

25  whether UBS advised other of its clients of such decision, but if it did, then its failure to so

26  advise the Agays is even more reprehensible.

27      22.   On May 1, 2023 federal regulators seized the First Republic Bank, and its

28           assets were sold to Chase Bank, and its preferred stock became worthless,

1  the few pennies for which it could be sold would be more than eaten up by commissions,

2  fees and charges to sell it.

3      23.  Had UBS timely apprised the Agays of the March 16, 2023 decision by First

4  Republic Bank to not make its next quarterly common stock dividend, their

5  confidence in the viability of First Republic Bank would have evaporated, and they would

6  have disposed of their First Republic Bank preferred stock.   In addition since this claim

7  "involves primarily a failure to disclose, positive proof of reliance is not a prerequisite to

8  recovery." *Affiliated Ute Citizens v. United States*, 406 U.S. 128,153 (1972).   On March

9  17, 2023 the Agays would have received One Hundred Twenty Thousand Dollars

10  ($120,000.00) for sale of their eight thousand (8,000) shares of  First Republic Bank

11  preferred stock.  In part based upon the capacity of a UBS affiliate, Plaintiffs are informed

12  and believe, and based upon that information and belief allege, that during March both

13  before and after March 16, 2023 UBS was selling First Republic Bank preferred stock that

14  was held by it or one or more of its affiliates, and for that reason wanted to avoid

15  competing sales by its clients.

16      24.  As a proximate result of UBS' failure to apprise the Agays of the First

17  Republic Bank decision not to pay the quarterly common stock dividend

18  the Agays have been damaged in the amount of One Hundred Twenty Thousand Dollars

19  ($120,000.00) plus interest thereon from March 17, 2023 at the rate of seven percent (7%)

20  per annum.

21  **SECOND CAUSE OF ACTION**

22  **(Class Action For Negligence)**

23      25.  Plaintiffs refer to Paragraphs 1-24, inclusive, of this Complaint, and by this

24  reference incorporate each and every allegation contained therein as though

25  again set forth in full.

26      26.  Based in part upon UBS' never contending that the Agays were the sole

27  owners of First Republic Bank stock held by UBS Plaintiffs are informed and

28  believe, and based upon that information and belief allege, that (1) there are many other

1  persons who likewise purchased First Republic Bank preferred stock from UBS, but were
2  not informed that First Republic Bank had suspended its common dividend, and who
3  therefore have a claim common to that of Plaintiffs (2) without information from UBS
4  there is no way to ascertain the actual number of such persons, (3) Plaintiffs' claim is
5  typical of the other UBS clients, (4) since these claims "involv[e] primarily a failure to
6  disclose, positive proof of reliance is not a prerequisite to recovery" *Affiliated Ute Citizens*
7  *v. United States*, 406 U.S. 128,153 (1972), the issues of law and fact predominate in the
8  claims of all the UBS clients who held First Republic preferred stock, (5) Plaintiffs would
9  adequately represent those other UBS clients, (6) by virtue of the shear number of such
10  clients it is impracticable to bring all of them before the court and (7) an action for the
11  benefit of all is the superior means to resolve the claims of all those who have such claim.

## THIRD CAUSE OF ACTION

### (For Breach of Fiduciary Duty and Elder Abuse)

27.   Plaintiffs refer to Paragraphs 1-24, inclusive of this Complaint, and by this
reference incorporate each and every allegation contained therein as though
again set forth in full.

28.   With the half-dozen exceptions above noted, every UBS investment purchase
or sale by the Agays was executed by UBS as a fiduciary either without any
consultation with either Richard or Arline or with a prior recommendation by UBS.

29.   Richard was born December 27, 1932 and Arline was born September 24,
1935, and in 2023 UBS knew of their ages..

30.   UBS knew or should have known that its failures to disclose as above alleged
was likely to be harmful to the Agays.  As a proximate result of UBS' failures
to disclose as above alleged UBS deprived the Agays of the right to sell the First Republic
Bank stock when it still had value of One Hundred Twenty Thousand Dollars
($120,000.00) thereby depriving them of the value of the First Republic Bank stock, and
therefore of the proceeds from the sale of their First Republic Bank stock available to them
when it still had a value of One Hundred Twenty Thousand Dollars ($120,000.00), each

1   and all constituting (a) undue influence as defined by Welfare and Institutions Code

2   Section 15610.70 and (b) UBS' depriving the Agays of property right made a financial

3   elder abuse by virtue of Welfare and Institutions Code and 15610.30(a), each of which is

4   made an elder abuse by virtue of Section 15510.07 (a)(3).

5       31.  Plaintiffs will use attorney services to prosecute this action.  Pursuant to

6       Welfare and Institutions Code Section 15657.5(a) the Agays are entitled to an

7   award against UBS for reasonable attorneys fees, the amount thereof to be determined by

8   the Court on motion following rendering of judgment in this case.

9   **FOURTH CAUSE OF ACTION**

10  **(Class Action For Breach of Fiduciary Duty)**

11      32.  Plaintiffs refer to Paragraphs 1-24, 26, and 28 of this Complaint, and by this

12      reference incorporate each and every allegation contained therein as

13  though again set forth in full.

14  **FIFTH CAUSE OF ACTION**

15  **(For Fraud and Deceit and Elder Abuse)**

16      33.  Plaintiffs refer to Paragraphs 1-24, inclusive and 29-31, inclusive of this

17      Complaint, and by this reference incorporate each and every allegation

18  contained therein as though again set forth in full.

19      34.  By virtue of the foregoing Plaintiffs are informed and believe, and based upon

20      such information and belief allege that UBS knew of the suspension of the

21  First Republic common stock dividend, and was bound to disclose it to the Agays, but

22  instead suppressed it from the Agays..

23      35.  Based upon the facts above alleged, Plaintiffs are informed and believe and

24      based upon such information and belief allege, that Defendants' acts herein

25  alleged were fraudulent and that Plaintiffs are entitled to exemplary damages.

26      36.  Plaintiffs are informed and believe, and based upon such information and

27      belief allege that the herein alleged suppression was an unfair and deceptive

28  practice.  By virtue of Civil Code Section 3345 Plaintiffs are entitled to triple the amount

1  of exemplary damages awarded.

2  ## SIXTH CAUSE OF ACTION

3  ### (Class Action for Fraud Deceit)

4  37.  Plaintiffs refer to Paragraphs 1-24, inclusive, 26, 34 and 35 of this Complaint,

5  and by this reference incorporate each and every allegation

6  contained therein  as though again set forth in full.

7  ## SEVENTH CAUSE OF ACTION

8  ### (For Bad Faith And Elder Abuse)

9  38.  Plaintiffs refer to Paragraphs 1-24, inclusive, 28-31, inclusive and 34-36,

10  inclusive of this Complaint, and by this reference incorporate each and every

11  allegation contained therein as though again set forth in full.

12  39.  In agreeing with the Agays to make the herein alleged sales of First Republic

13  Bank preferred stock UBS had the obligation to act in good faith.  In failing to

14  apprise the Agays of the herein alleged suspension of the First Republic Bank common

15  stock dividend, UBS was guilty of bad faith.

16  ## EIGHTH CAUSE OF ACTION

17  ### (Class Action For Bad Faith)

18  40.  Plaintiffs refers to Paragraphs 1-24, inclusive, 26, 34,  35 and 39 of this

19  Complaint, and by this reference incorporate each and every allegation

20  contained therein as though again set forth in full.

21  ## NINTH CAUSE OF ACTION

22  ### (For Negligence)

23  41.  Plaintiffs refers to Paragraphs 1-24, inclusive, of this Complaint, and by this

24  reference incorporate each and every allegation contained therein as though

25  again set forth in full.

26  42.  Plaintiffs are informed and belief, and based upon such information and belief

27  allege, that even though an investor can determine the percentage that his or

28  her investments in one company bears to the total his or her similar investments, there is a

R&N-Compl & Ans.039

COMPLAINT
-10-

1   standard in the securities industry for a broker-dealer to bring to the attention of an

2   investor ahead of a potential purchase that such purchase is beyond normal risk if the

3   purchase would make the investment held in an account in one company's securities

4   would be over five percent (5%) of the total investment in that account for that kind of

5   ivestment .

6      43.   The Agays' 2001 purchase of First Republic Bank caused the percentage of

7            the cost of the First Republic Bank preferred stock (a) held in the Agay UBS

8   Account in which it was purchased to exceed thirty-three percent (33%) of the value of all

9   the preferred stock, including that of First Republic Bank preferred stock, so held and to

10  exceed over twenty-seven percent (27%) of the value of all the stock, including that of

11  First Republic Bank preferred stock, so held, (b) held in all Agay UBS Accounts to exceed

12  nineteen and three-quarter percent (19.75%) of the value of all the preferred stock,

13  including that of First Republic Bank preferred stock, so held, and to exceed seventeen

14  percent (17%) of the value of all stock, including that of First Republic Bank preferred

15  stock, so held.  The percentage of the cost of the First Republic Bank preferred stock of

16  the value of all investments in the Agay UBS Account in which it was purchased was

17  more than fifty percent higher than the five percent threshold amount that should have

18  caused UBS to forewarn the Agays.   UBS did not apprise the Agays of any of the

19  foregoing.

20     44.   Had the Agays been reminded that their 2021 purchase would cause an over

21           concentration in First Republic Bank considered a risk worthy of being noted

22  they would not have made the 2021 purchase, although as above alleged "positive proof of

23  reliance is not a prerequisite to recovery,"

24     45.   As a proximate result of UBS' failure to so alert the Agays the Agays have

25           been damaged in the amount of Ninety-seven thousand, six hundred thirty-six

26  dollars and fifty-nine cents ($97,636.59) and interest thereon from June 1, 2023 at the rate

27  of seven percent (7%) per annum.

28

# TENTH CAUSE OF ACTION

## (For False Advertising)

46.  Plaintiffs refers to Paragraphs 1-8, inclusive, 29, 31, 35 and 36 of this Complaint, and by this reference incorporate each and every allegation contained therein as though again set forth in full.

47.  The Agays purchased the following United State Treasury bills from or through UBS.  Plaintiffs are unaware whether UBS made the sales acting strictly as a broker or whether in fact it was the seller and in addition to the commissions and fees/charges also made a profit on the purchase.

47.1.  With regard to an August 31, 2022 purchase of $74,000 bill UBS prior to such purchase and thereafter in confirmation of the purchase represented to the Agays that the yield on such purchase would be 3.283%.  In fact that represented yield was 3.784% higher than the true yield.

47.2.  With regard to a March 9, 2023 purchase of $14,000 bill UBS prior to such purchase and thereafter in confirmation of the purchase represented to the Agays that the yield on such purchase would be 5.238%.  In fact that represented yield was 11.875% higher than the true yield.

47.3.  With regard to a March 10, 2023 purchase of $25,000 bill UBS prior to such purchase and thereafter in confirmation of the purchase represented to the Agays that the yield on such purchase would be 5.115%.  In fact that represented yield was 8.048% higher than the true yield.

47.4.  With regard to a March 10, 2023 purchase of $6,000 bills UBS prior to such purchase and thereafter in confirmation of the purchase represented to the Agays that the yield on such purchase would be 5.115%.  In fact that represented yield was 33.342% higher than the true yield.

48.  The Agays relied upon the represented yields by UBS.

49.  UBS' representation constituted a false and/or misleading statement in violation of Business and Professions Code Section 17500.  Plaintiffs are

1  entitled to receive restitution in the amount of One Hundred Forty Dollars ($140.00), the

2  amount they were overcharged in each purchase as a result of the false and misleading

3  statements by UBS

4      50.   UBS' misrepresentation constituted (a) undue influence as defined by Welfare

5            and Institutions Code Section 15610.70 and (b) UBS' depriving the

6  Agays of property right made a financial elder abuse by virtue of Welfare and Institutions

7  Code and 15610.30(a) and (b), each of which is made an elder abuse by virtue of Section

8  15510.07 (a)(3).

9  ## ELEVENTH CAUSE OF ACTION

10  ### (Class Action for False Advertising)

11      51.   Plaintiffs refers to Paragraphs 1-24, inclusive, 26, 35. 47, 48 and 49 of this

12            Complaint, and by this reference incorporate each and every allegation

13  contained therein as though again set forth in full.

14  ## TWELFTH CAUSE OF ACTION

15  ### (For Fraud and Deceit And Elder Abuse)

16      52.   Plaintiffs refers to Paragraphs 1-8, inclusive, 29, 31, 35, 36, 47 and 48 of this

17            Complaint, and by this reference incorporate each and every allegation

18  contained therein as though again set forth in full.

19      53.   UBS' representations of yield were not warranted by the information it had

20            and UBS had no reasonable ground for believing the represented yields to be

21  true.

22      54.   As a proximate result of UBS' misrepresentations the Agays were damaged in

23            the amount of One Hundred Forty Dollars ($140.00).

24  ## THIRTEENTH CAUSE OF ACTION

25  ### (Class Action For Fraud and Deceit)

26      55.   Plaintiffs refer to Paragraphs 1-8, inclusive, 26, 35, 47, 48, 53 and 54 of this

27            Complaint, and by this reference incorporate each and every allegation

28  contained therein as though again set forth in full.

**FOURTEENTH CAUSE OF ACTION**

**(For Fraud and Deceit And Elder Abuse)**

56.  Plaintiffs refer to Paragraphs 1-8, inclusive, 29, 31, 35, 47, 48, 50 and 54 of this Complaint, and by this reference incorporate each and every allegation contained therein as though again set forth in full.

57.  Plaintiffs are informed and believe, and based upon such information and belief allege tht UBS did not believe its representations of yield to be true.

**FIFTEENTH CAUSE OF ACTION**

**(Class Action For Fraud and Deceit)**

58.  Plaintiffs refer to Paragraphs 1-8, inclusive, 26, 31, 35, 47, 48, 54 and 57 of this Complaint, and by this reference incorporate each and every allegation contained therein as though again set forth in full.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them as follows:

A.  For damages on the First, Third, Fifth and Seventh Causes of Action in the amount of One Hundred Twenty Thousand Dollars ($120,000.00) plus interest thereon from March 17, 2023 at the rate of seven percent (7%) per annum;

B.  For damages on the Ninth Cause of Action in the amount of One Hundred Twenty Thousand Dollars ($120,000.00) plus interest thereon from June 1, 2023 at the rate of seven percent (7%) per annum;

C.  For restitution in the amount of $140.00 plus interest on one fourth thereof on each purchase from the date thereof at the rate of seven percent (7%) per annum;

D.  For attorneys fees by reason of Welfare and Institutions Code Section 15657.5(a);

E.  For exemplary damages on the Third, Fifth, Seventh, Tenth Twelfth and Fourteenth Causes of Action in the amount set forth in separately filed and

1  served Statement;

2        F   For Tripling of exemplary damages on the Third, Fifth, Seventh, Tenth Twelfth

3            and Fourteenth Causes of Action;

4        G. For certification of the class and relief to the Class for damages and restitution

5            to members of the class on the Second, Fourth, Eighth, Eleventh, Thirteenth and

6  Fifteenth Causes of Action;

7        H. For such other interest on the foregoing as allowed by law;

8        I.  For costs of suit; and

9        I.  For such other and further relief as the Court deems proper.

10  DATED: March 7, 2024.

11

12

13                                    RICHARD D. AGAX
                                      Attorney for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28